**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED SCREENERS ASSOCIATION LOCAL ONE, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO AIRPORT COMMISSION,<br><br>    Defendants.<br>_____/ | No. C 05-00001 JSW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |

**INTRODUCTION**

This matter comes before the Court upon consideration of the motion to dismiss Plaintiffs' Second Amended Complaint ("SAC") filed by the City and County of San Francisco ("City"), the San Francisco Airport Commission ("Commission"), and John L. Martin ("Mr. Martin") (collectively "City Defendants").

Having considered the parties' pleadings, relevant legal authority, the record in this case, having had the benefit of oral argument[1], and for the reasons set forth in the remainder of this Order, the Court GRANTS IN PART AND DENIES IN PART the motion.

**FACTUAL SUMMARY**

Covenant provides passenger and baggage security screening at the San Francisco International Airport ("SFO"), pursuant to a contract with the Department of Homeland Security

---

[1] The City Defendants failed to appear at the hearing.

and a lease with the City. (SAC, ¶¶ 15-17.) Local One is a labor union that wants to be the recognized bargaining agent for Covenant employees.

In February 2000, the Commission adopted Resolution No. 00-0049 entitled "Resolution Approving Use of Labor Peace/Card Check Rule and Model Card Check Agreement," which is comprised of a resolution, a rule, and a model agreement (hereinafter "Card Check Resolution"). (*See* SAC, ¶ 17, Ex. 2.) The Card Check Resolution enables a labor organization to become the recognized representative for a group of employees through a mechanism that is separate from election procedures established by the National Labor Relations Act. (*Id.*, ¶ 20.) Plaintiffs do not challenge the validity or constitutionality of the Card Check Resolution.

Local One has had to compete with Service Employees International Union Local 790 ("SEIU Local 790") in its efforts to become the bargaining agent for Covenant employees. As a result of a settlement agreement regarding disputes with SEIU Local 790 and Covenant, Local One was given the right to call a secret ballot election on the question of whether Covenant employees wanted it as their bargaining representative. (*See* SAC, ¶¶ 44-48.) Although not set forth in the SAC, Plaintiffs lost the election. (*See* Opp. at 14, 15.)

Plaintiffs allege that the City Defendants have unlawfully favored SEIU Local 790 over Local One. By way of example, Plaintiffs allege that Mr. Martin only notifies American Federation of Labor - Congress of Industrialized Organizations when the Airport selects a contractor. Plaintiffs also allege that the City Defendants did not take affirmative steps to prevent SEIU Local 790 organizers from harassing Local One members and failed to remedy this when Local One complained. Finally, Plaintiffs allege that the City Defendants apply the terms of the Card Check Resolution in an unequal fashion. (*See generally* SAC, ¶¶ 30-43.)

As of the date of the filing of the SAC, neither Local One nor SEIU Local 790 had requested a Card Check Agreement with Covenant. (Declaration of Tryg McCoy, ¶ 4.)[2]

---

[2] At the hearing, Plaintiffs advised the Court that Covenant had recently entered into a Card Check Agreement with SEIU Local 790.

2

**ANALYSIS**

**A.     Legal Standards Applicable to Motions to Dismiss.**

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss should not be granted unless it appears beyond a doubt that a plaintiff can show no set of facts supporting his or her claim. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). In ruling on a Rule 12(b)(6) motion, the complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). The court, however, is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Cleggy v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). A district court may consider documents attached to a plaintiff's complaint without converting a motion to dismiss into a motion for summary judgment. *Hal Roach Studios, Inc. v. Richmond & Feiner Co., Inc.*, 806 F.2d 1542, 1555 n.19 (9th Cir. 1989). Unlike a Rule 12(b)(6) motion, in moving to dismiss under Rule 12(b)(1) a party can "attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

**B.     Claims Against the City Defendants.**

Plaintiffs assert one cause of action against the City Defendants for violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985. Plaintiffs allege that the City Defendants' conduct in favoring SEIU Local 790 and in failing to enforce the Card Check Resolution in an equal manner deprives them of their rights: (1) under the National Labor Relations Act ("NLRA"); (2)

3

their First Amendment right to freedom of association; (3) their Fourteenth Amendment right to equal protection; and (4) their Fifth and Fourteenth Amendment rights to due process of the law. (SAC, ¶¶ 67-73.)

The City Defendants move to dismiss portions of the Section 1983 claim pursuant to Rule 12(b)(6) on the grounds that Plaintiffs have not been deprived of their due process rights under the Fifth and Fourteenth Amendments and have not been deprived of their First Amendment right to freedom of association. The City Defendants move to dismiss the Section 1985 claim under Rule 12(b)(6) on the ground that Plaintiffs are not members of a protected class. Finally, the City Defendants move to dismiss the entirety of the first cause of action on the grounds that Plaintiffs lack standing and that the claims are not ripe.

**1.     Plaintiffs fail to state a claim based on violations of Due Process.**

Plaintiffs premise their Section 1983 claim in part on alleged violations of their Due Process rights under the Fifth and Fourteenth Amendments. To establish a claim for violation of due process, a plaintiff must show government deprivation of a life, liberty, or property interest. *See Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). Taking the facts alleged in the SAC as true, Plaintiffs fail to state facts demonstrating that the City Defendants' actions deprived them of a life, liberty or property interest. Furthermore, at the hearing on the motion, Plaintiffs failed to elucidate any such interest in response to the Court's inquiry on this point. In light of these facts and given that the SAC is the third iteration of Plaintiffs' complaint, the Court concludes that there are no facts that Plaintiffs could allege to state such a claim against the City Defendants.

Accordingly, the City Defendants motion as to this aspect of Plaintiffs' Section 1983 claim is granted and this portion of the first cause of action is DISMISSED WITH PREJUDICE.

**2.     Plaintiffs fail to state a claim under 42 U.S.C. § 1985.**

To establish a claim for a violation of 42 U.S.C. § 1985(3), "a plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; 4)

4

whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Sever v. Alaska Pulp Corporation*, 978 F.2d 1529, 1536 (9th Cir. 1992) (citing *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 828-29 (1983)).

To establish the second element of a Section 1985(3) claim, a plaintiff must allege and prove that the deprivation of the right in question was "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Griffith v. Breckenridge*, 403 U.S. 88, 102 (1971)); *see also McCalden v. California Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir. 1992) ("'the plaintiff must be a member of a class that requires special federal assistance in protecting its civil rights.'") (quoting *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1519 (9th Cir. 1987)).

In *United Brotherhood of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott,* 463 U.S. 825 (1983), the Supreme Court held, in the context of a Section 1985(3) claim based on alleged violations of First Amendment rights, that conduct taken by union members against non-members was not subject to the protection of Section 1985 where the alleged conspirators were driven by an economic or commercial motive. *Scott*, 463 U.S. at 838-39.[3]

Subsequent to the Supreme Court's decision in *Scott*, in *Sever, supra*, the Ninth Circuit stated that its general rule

> is that section 1985(3) is extended beyond race only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights. ... More specifically, we require either that the courts have designated the class in question as a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection.

*Sever*, 978 F.2d at 1536 (citations and internal quotations omitted).

---

[3] Many courts have construed *Scott* to hold that alleged deprivations of rights based on pro-union or anti-union activity do not fall within the scope of Section 1985(3). *See, e.g., Thierren v. Hamilton*, 849 F. Supp. 110, 115 (D. Mass. 1994); *Lajoie v. Connecticut St. Bd. of Labor Relations*, 837 F. Supp. 34, 40 (D. Conn. 1993); *Dun n v. New Jersey Transit Co.*, 681 F. Supp. 246, 251 (D.N.J. 1987).

Plaintiffs contend they qualify as a "protected class" for purposes of Section 1985 because they are employees with rights under the NLRA. Plaintiffs' only authority in support of this argument is *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103 (1989). In the *Golden State* case, the Supreme Court held that a party could pursue a Section 1983 claim based upon governmental interference in conduct protected under the NLRA. The Court did not, however, suggest that the NLRA represents a "governmental determination that [union or non-union employees] require and warrant special federal assistance in protecting their civil rights." Nor did the Supreme Court suggest that such a class required special protection.

The Court concludes that Plaintiffs have failed to state a claim under Section 1985. First, it is clear from the SAC that the sole purpose for Card Check Resolution and the accompanying rule "is to protect the Airport Commission and its proprietary interest in the efficient operation of the Airport, the resulting revenues from those operations, revenues directly accruing to the City from those operations, and the revenues indirectly accruing to the City from its positive image as a center for business and tourism." (SAC, Ex. 2 at p. 3; *see also generally* SAC, Ex. 2 at ¶. 1-3.) To the extent Plaintiffs' allegations rest on claims that the City Defendants use the Card Check Resolution to discriminate against them in favor of other unions, they have not alleged facts to show that the City Defendants were driven by anything other than commercial or economic motives.

In addition, assuming without deciding that Plaintiffs' status as a labor union or as members of a labor union would render them a "protected class" for purposes of Section 1985, the facts alleged do not suggest that the City Defendants' were motivated by the Plaintiffs' status as *union* members. Rather, Plaintiffs assert that the City Defendants preferred other unions over Plaintiffs' union. The Court concludes that such allegations do not establish that Plaintiffs are the type of protected class who warrant protection under Section 1985(3).

Accordingly, the City Defendants' motion as to Plaintiffs' Section 1985(3) claim against the City Defendants is GRANTED and this claim is DISMISSED WITH PREJUDICE.

### 3. Plaintiffs Have Not Alleged Sufficient Facts to Show They Have Standing as to the Section 1983 Claim to the Extent It is Based on Alleged Violations of Their Rights Under the NLRA.

"Article III of the Constitution requires that a plaintiff have standing before a case may be adjudicated." *Covington v. Jefferson County*, 358 F.3d 626, 637 (9th Cir. 2004). To satisfy the Constitution's standing requirements, a plaintiff must show (1) an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury must be fairly traceable to the challenged action of the defendant; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Covington*, 358 F.3d at 637-38. A plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *Lujan*, 504 U.S. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion dismiss, [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." *Id*. (internal cite and quotations omitted).

Although the First Cause of Action references actions taken by the City Defendants pursuant to the Card Check Resolution, the allegations about the City Defendants' conduct do not depend on any person having invoked it. Rather, Plaintiffs claim that the City Defendants treated them differently from other unions, including allegedly disparate use of the terms of the Card Check Resolution. Plaintiffs allege that they were injured by the City Defendants' conduct because those actions undermined their free choice in the election and because Local One lost the election. (*See, e.g.,* SAC, ¶¶ 32-38; Opp. at 6:14-16, 19-22; 14:3-7; 15:10-14.) At the pleading stage, the Court concludes that these facts would be sufficient to demonstrate the first two prongs of the standing requirements.

Plaintiffs have not, however, met their burden to show that this Court can redress this aspect of their Section 1983 claim. The Court recognizes that in the *Golden State* case, *supra*, the Supreme Court held that a Section 1983 claim may be premised upon violations of the NLRA. In *Golden State*, however, it was evident that the plaintiffs' alleged injuries could be redressed by the court. Here, Plaintiffs candidly admit the crux of this aspect of the Section

1983 claim is their assertion that the City Defendants have interfered in their campaign to become the recognized bargaining agent for Covenant employees and that they were injured because they lost the election. (*See, e.g.*, Opp. at 6:14-16, 19-22; 14:3-7; 15:10-14.)

Specifically, Plaintiffs state that they seek relief "forcing" the City Defendants "to cease interfering with Plaintiff, Local One, as it campaigns to unionize airport employees." (SAC, ¶ 1; *see also* SAC, Prayer for Relief at p. 21 (requesting injunctive relief to preliminarily and permanently enjoin the City Defendants from "interfering with any union campaign on the Airport premises").) Plaintiffs further allege that the City Defendants "unlawfully interfered with the union organizing activities and election campaign by favoring SEIU Local 790 over Local One," and that certain actions taken by the City Defendants "materially constrain Covenant employees' free choice during the campaign." (*Id.*, ¶¶ 30, 32.) Plaintiffs also allege that the City Defendants "took no affirmative steps to prevent S.E.I.U. organizers and activists from harassing Local One members," and that the City Defendants "created an atmosphere that encourages physical threats and open hostility in an effort to intimidate Local One's supports and put them in fear of physical and/or company retaliation." (*Id.*, ¶¶ 35, 36; *see also id.*, ¶¶ 37-43 (describing other actions by City Defendants related to election campaign).)

Taking these factual allegations to be true, Plaintiffs' allegations against the City Defendants on the NLRA aspect of the Section 1983 claim are a challenge to the outcome of the election. However, the NLRB has primary jurisdiction over matters of representation, including the conduct of an election. *See Pace v. Honolulu Disposal Services, Inc.*, 257 F.3d 1150, 1156 (9th Cir. 2000). If a party challenges an election, the NLRB can look to conduct of third parties. *See, e.g., N.L.R.B. v. Sauk Valley Mfg. Co., Inc.*, 486 F.2d 1127, 1131-32 & n.5 (9th Cir. 1973) (discussing standards for reviewing challenges to elections based on non-party conduct). Taking the factual allegations in the SAC as true, and whether this aspect of Defendants' motion would be characterized more properly as a challenge to subject matter jurisdiction, Plaintiffs have not alleged facts demonstrating that their alleged injury with respect to the Section 1983 NLRA claim can be redressed by this Court.

As such, Defendants' motion is GRANTED and that aspect of Plaintiffs' claim is DISMISSED. Because, Plaintiffs have stated to the Court that they likely will seek leave to amend the current SAC, the Court shall not dismiss this aspect of Plaintiffs' Section 1983 claim with prejudice. If Plaintiffs wish to amend this claim to seek relief for an injury that could be redressed by and falls within the jurisdiction of this Court, they may include such a request in any motion to amend. If Plaintiffs make such a request, they shall identify the particular rights under the NLRA that are at issue, citing to the particular sections of the NLRA that form the basis of their claims.

### 4. Plaintiffs have stated a Section 1983 claim based on alleged deprivations of their right to freedom of association.[4]

Finally, Plaintiffs base their Section 1983 claim on alleged deprivations to their First Amendment right to freedom of association. In moving to dismiss this claim under Rule 12(b)(6), the City Defendants again focus on the Card Check Resolution and argue that Plaintiffs have not demonstrated that the Card Check Resolution directly and substantially abridged their right to associate with a labor union. (City Defendants Mot. at 11-12.) However, Plaintiffs' allegations are not so limited. Rather, Plaintiffs claim that a multitude of actions by the City Defendants abridge their right to association. (*See* SAC, ¶¶ 30-43.) At this stage of the litigation, the Court concludes Plaintiff have met their pleading burden and the City Defendants' Rule 12(b)(6) motion is DENIED as to this aspect of their Section 1983 claim.

//
//
//
//
//

---

[4] Because this claim does not depend upon any party having invoked the Card Check Resolution, the Court concludes that it is ripe. The Court also concludes Plaintiffs have set forth sufficient facts to show that they have standing on this claim.

Defendants did not move to dismiss the equal protection aspect of Plaintiffs' Section 1983 claim under Rule 12(b)(6). The Court also concludes that this aspect of the Section 1983 claim is ripe and that Plaintiffs have standing to assert the claim.

**CONCLUSION**

For the foregoing reasons, Defendants motion is GRANTED IN PART AND DENIED IN PART. The City Defendants answer shall be due within twenty (20) days of the date of this Order.

**IT IS SO ORDERED.**

Dated: October 19, 2005

                                                    JEFFREY S. WHITE
                                                    UNITED STATES DISTRICT JUDGE